UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
WILLOW RUN FOODS, INC.,

        *Plaintiff*,

v.                                  No. 3:22-CV-00170

SUPPLY MANAGEMENT
SERVICES, INC.,

        *Defendant*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HINMAN HOWARD<br>& KATTELL, LLP<br>*Attorneys for Plaintiff*<br>80 Exchange Street<br>P.O. Box 5250<br>Binghamton, NY 13902 | JAMES S. GLEASON, ESQ. |
| OCHS & GOLDBERG, LLP<br>*Attorneys for Defendant*<br>1270 Avenue of the Americas<br>Suite 747<br>New York, NY 10020 | MITCHELL GOLDBERG, ESQ. |

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

### I. **INTRODUCTION**

Plaintiff Willow Run Foods, Inc. ("Willow Run" or "plaintiff") moves for a permanent injunction enjoining defendant Supply Management Services, Inc. ("SMS" or "defendant") from arbitrating its claims set forth in an action (the "Arbitration") filed with the American Arbitration Association ("AAA") on February 11, 2022.

On February 23, 2022, Willow Run filed a complaint and a motion for permanent injunction in this Court. The only relief plaintiff is seeking is a permanent injunction of the Arbitration. On March 16, 2022, SMS opposed plaintiff's injunction motion, and, on March 22, 2022, plaintiff filed its reply. The day prior to plaintiff filing its reply papers, defendant answered the complaint, asserting various affirmative defenses.

Willow Run's motion for permanent injunction having been fully briefed, the Court will now consider it on the basis of the parties' submissions without oral argument.

### II. **BACKGROUND**

Willow Run is a New York-based distributor of food and supplies for various fast-food restaurants. Dkt. 1 at ¶¶ 1-2.[1] In the past, plaintiff has

---

[1] Pagination corresponds to CM/ECF.

distributed goods on a non-exclusive basis to numerous Popeyes Louisiana Kitchen ("Popeyes") franchises throughout the northeast.  *Id.* ¶ 2.  SMS, a Georgia-based non-profit corporation, provides exclusive supply chain services for Popeyes.  *Id.* ¶¶ 3-4.

On February 2, 1998, Willow Run entered into a distribution agreement (the "1998 Distribution Agreement") with Popeyes Operators Purchasing Association, Inc. ("POPCA").  Dkt. 1-1 at 35-50.  As discussed below, defendant claims that it succeeded the interests to POPCA under the 1998 Distribution Agreement – a point that plaintiff disputes.  The 1998 Distribution Agreement contains an arbitration clause providing that any disputes between the parties to the agreement "shall be determined solely and exclusively by arbitration [in Atlanta, Georgia] in accordance with the rules of the American Arbitration Association."  *Id.* at 44-45.

As set forth in the original Exhibit A to the 1998 Distribution Agreement, the agreement's initial term ran from February 1, 1998 through January 31, 2001.  Dkt. 1-1 at 47.  SMS has submitted letters dated March 20, 2000 and April 7, 2000 in which SMS and Willow Run agreed "to extend our Popeyes/Willow Run Foods contract for five additional years."  Dkt. 10-1 at 2.  In the April 7 letter, defendant referred to the contract as "the existing distribution contract."  *Id.* at 3.  Defendant also attached a new Exhibit A (the "2000 Exhibit A") to the April 7 letter, which both parties executed.  *Id.*

3

at 4. Among other revisions, the 2000 Exhibit A extended the term of the 1998 Distribution Agreement to April 30, 2005. *Id.*

On April 6, 2003, SMS and Willow Run again agreed to a new Exhibit A (the "April 2003 Exhibit A"). Dkt. 1-1 at 51. The April 2003 Exhibit A refers to the "original agreement" and notes that it "will supercede all previous Exhibit A attachments." *Id.* Additionally, the April 2003 Exhibit A further extended the parties' business relationship to May 1, 2008. *Id.*

SMS and Willow Run subsequently agreed to five additional amendments chronologically dated March 1, 2007, January 14, 2010, January 1, 2014, April 12, 2016, and April 1, 2020 that, among other things, extended the parties' business relationship to April 1, 2022. *See* Dkt. 1-1 at 17-34. These amendments all refer to a "Food Service Distribution Agreement dated as of April 7, 2003." *See id.*

On July 16, 2021, Willow Run sent SMS a letter purporting to terminate the Alleged 2003 Agreement. Dkt. 1-1 at 53. Otherwise, the record does not reflect any other attempts by either party to terminate the 1998 Distribution Agreement.

Pursuant to the arbitration provision in the 1998 Distribution Agreement, SMS commenced the Arbitration on February 11, 2022. In the Arbitration, defendant claims that Willow Run materially breached the 1998 Distribution Agreement by discontinuing service to Popeyes locations in plaintiff's

4

authorized service territory over the course of five months before its purported termination of the parties' agreement. *See generally*, Dkt. 1-1 at 4-15. Defendant seeks damages and attorneys' fees for itself and on behalf of approximately 250 Popeyes franchisees (the "Franchisees"), which it claims are members of SMS that own and operate nearly 250 Popeyes locations. Defendant asserts that the Franchisees have assigned their claims to it as intended third-party beneficiaries under the 1998 Distribution Agreement.

Rather than respond to SMS's claims, Willow Run brought this action seeking a permanent injunction of the Arbitration. Plaintiff claims that there is no written agreement between itself and either SMS or the Franchisees. Specifically, plaintiff claims that an agreement dated April 7, 2003 (the "Alleged 2003 Agreement") replaced and superseded the 1998 Distribution Agreement.

Notably, neither party has been able to locate the Alleged 2003 Agreement. According to Willow Run, the Alleged 2003 Agreement exists because it is referenced in several post-2003 amendments. *See* Dkt. 1-1 at 17-34. However, SMS claims that these references are the result of a clerical error, and that the Alleged 2003 Agreement never existed. Thus, according to defendant, the 1998 Distribution Agreement, along with its subsequent amendments, continued to be the operative agreement between the parties for their entire business relationship.

### III. <u>LEGAL STANDARD</u>

In deciding a motion to enjoin arbitration, courts apply a standard similar to that used to evaluate a motion for summary judgment. *Kwatinetz v. Mason*, 356 F. Supp. 3d 343, 347 (S.D.N.Y. 2018); *see also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration"). Courts "consider all relevant, admissible evidence submitted by the parties and draw all reasonable inferences in favor of the non-moving party." *Kwatinetz*, 356 F. Supp. 3d at 347 (citing *Boroditskiy v. European Specialties, LLC*, 314 F. Supp. 3d 487, 492 (S.D.N.Y. 2018)).

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Bensadoun*, 316 F.3d at 175-78. If the moving party has shown facts entitling it to an injunction against the pending arbitration, "the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Kwatinetz*, 356 F. Supp. 3d at 347 (citing *Veera v. Janssen*, 2005 WL 1606054, at *3 (S.D.N.Y. July 5, 2005)).

## IV. <u>DISCUSSION</u>

Willow Run claims that the parties have no written agreement to arbitrate SMS's claims, and, in the absence of such an agreement, the Court must enjoin the Arbitration. In response, defendant asserts that the 1998 Distribution Agreement, which does have an arbitration provision, along with its several amendments, has been the operative agreement between the parties for their entire business relationship. According to defendant, the Alleged 2003 Agreement never existed and any references to it are are the result of a clerical error. At a minimum, defendants have submitted evidence demonstrating a genuine issue of material fact, and plaintiff's motion to enjoin the arbitration must be denied.

In the Second Circuit, courts follow a two-part test to determine the arbitrability of claims. In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement. *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citing *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002)). Where the Court determines – pursuant to the first inquiry – that the parties have not entered into a valid and binding arbitration agreement, it has the authority to enjoin the arbitration proceedings. *Id.* (citing *United States v. Eberhard*,

7

2004 WL 616122, at *3 (S.D.N.Y. Mar. 30, 2004)). Before addressing the second question, the Court must also determine who – it or the arbitrator – properly decides the issue. *Id.* (citing *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011)).

First, the Court must consider whether the parties had a valid agreement to arbitrate.

Willow Run argues that it entered the 1998 Distribution Agreement with POPCA, not SMS, and never agreed that the agreement would govern its relationship with SMS. Instead, Willow Run claims that the Alleged 2003 Agreement, which neither party can locate, controls the parties' relationship. The only evidence plaintiff offers to support this premise are the five amendments the parties entered, which each make reference to a "Food Service Distribution Agreement dated as of April 7, 2003." *See* Dkt. 1-1 at 17-34. Plaintiff reasons that because neither party can find the Alleged 2003 Agreement and none of the subsequent amendments references an arbitration agreement, an agreement to arbitrate must not exist. Without a written agreement to arbitrate, plaintiff claims that it cannot be compelled to do so.

Even assuming the minimal evidence Willow Run offers is sufficient to show that the parties do not have an agreement to arbitrate, SMS has

8

submitted evidentiary facts demonstrating, at the very least, a genuine issue of material fact.[2]

First, SMS has submitted evidence that the 1998 Distribution Agreement, which does contain an arbitration provision, controls the parties' relationship. Although defendant itself was not a party to the 1998 Distribution Agreement, a reasonable factfinder could conclude that it succeeded to the interests of POPCA under the agreement, and Willow Run consented to such an assignment.

The record shows that the 1998 Distribution Agreement, signed by Willow Run and POPCA, provided for an initial term of February 1, 1998 through January 31, 2001. Dkt. 1-1 at 47. Yet, in a letter dated March 20, 2000, Willow Run wrote to SMS, not POPCA, that it agreed "to extend our Popeyes/Willow Run Foods contract for five additional years." Dkt. 10-1 at 2. On April 7, 2000, SMS responded to plaintiff, referring to the agreement the parties sought to extend (which had to be the 1998 Distribution Agreement) as the "existing distribution contract" and attaching a new Exhibit A that detailed the five-year extension. *Id.* at 3-4.

---

[2] While the Court continues its inquiry, it has substantial doubts about the proof plaintiff has offered to support its claim. It is highly unlikely that the parties would have done business with one another for over eighteen years without either party having a copy of the Alleged 2003 Agreement. Moreover, even assuming the Alleged 2003 Agreement existed, plaintiff cannot confirm that the agreement lacked an arbitration clause. Plaintiff's argument that the five subsequent amendments did not reference arbitration is similarly unavailing – each of these amendments was primarily for the purpose of extending the parties' business relationship, not to restate every term from the agreement they modified.

Willow Run and SMS subsequently agreed to numerous further extensions of their business relationship. Specifically, the parties agreed to the April 2003 Exhibit A, in which they again referred to the "original agreement," Dkt. 1-1 at 51, and five additional amendments. *See* Dkt. 1-1 at 17-34.

Thus, although it was not a signatory to the 1998 Distribution Agreement, SMS, not POPCA, signed each of the subsequent agreements with Willow Run. Given plaintiff's clear and unambiguous language in the March 20, 2000 letter and the parties' ensuing course of dealing, there is at least a triable issue of fact that plaintiff consented in writing to defendant succeeding POPCA's interests.[3]

These documents also suggest that, despite its reference in the five amendments executed by the parties, the Alleged 2003 Agreement never existed, but was rather born of a series clerical error made by the parties. The amendments refer to a "Food Service Distribution Agreement dated as of April 7, 2003," which is the same date the April 2003 Exhibit A went into effect. Yet the April 2003 Exhibit A is clearly linked to a *prior* agreement, not a brand-new distribution agreement from the same day it became effective. Indeed, the April 2003 Exhibit A references the "original agreement" and notes that it "will supercede all previous Exhibit A

---

[3] Paragraph 18 of the 1998 Distribution Agreement requires a party assigning its rights to receive written consent from the other party.

10

attachments." Dkt. 1-1 at 51.  Had the April 2003 Exhibit A been tied to the Alleged 2003 Agreement, it would not have had any previous Exhibit A attachments to supercede and would not have contained this provision.  A review of each "Exhibit A" in the record confirms this point; the only iteration of the parties' Exhibit A which does not explicitly note in its first line that "[t]his attachment to the original agreement will supercede all previous Exhibit A attachments" is the Exhibit A to the "original agreement" (i.e., the 1998 Distribution Agreement).  *Compare* Dkt. 1-1 at 47 (1998 Exhibit A) *with* Dkt. 10-1 at 4 (2000 Exhibit A) *and* Dkt. 1-1 at 51 (2003 Exhibit A).[4]  In short, the parties knew how to include this language when they needed it, and its inclusion in the April 2003 Exhibit A ties the exhibit to the 1998 Distribution Agreement.

Accordingly, drawing all inferences in SMS's favor, defendant has, at minimum, demonstrated genuine issues of material fact that: (i) it succeeded POPCA's interests under the 1998 Distribution Agreement; (ii) Willow Run agreed to such an assignment; and (iii) the 1998 Distribution Agreement, as amended by the 2000 Exhibit A, the 2003 Exhibit A, and the five subsequent

---

[4] In its Arbitration Demand and Complaint filed with the American Arbitration Association, SMS alleges that the parties entered into a distribution agreement in April 2003.  However, as defendant explains in its opposition papers, it conducted additional investigation of the Alleged 2003 Agreement once plaintiff filed this action, which prompted its new position that the agreement never existed.

amendments, was the operative agreement between SMS and Willow Run for the entirety of the parties' business relationship.

Lastly, Willow Run argues that the Franchisees' claims must be enjoined because their credit agreements do not contain an arbitration clause. Plaintiff fails to present the credit agreements as evidence, and in fact does not highlight anything supporting its claim beyond a statement in an affidavit from its Chief Financial Officer ("CFO"). Moreover, a review of the record failed to uncover any further evidence supporting plaintiff's position. While courts must consider all relevant, admissible evidence submitted by the parties when reviewing motions to enjoin arbitration (including affidavits), plaintiff's single statement from its CFO, without more, is insufficient to meet its burden of showing facts entitling it to an injunction. Accordingly, Willow Run's injunction motion will also be denied with respect to the Franchisees.

## V. **CONCLUSION**

Willow Run's entire injunction motion rests on the argument that no valid agreement to arbitrate existed between the parties. As to SMS, defendant has more than demonstrated a genuine issue of material fact on the issue; as to the Franchisees, plaintiff has failed to present evidence which would entitle it to injunctive relief. Notably, defendant has not cross moved to

compel arbitration. Unless defendant does so, the Court sees no reason to go further in its arbitrability analysis.

Therefore, it is

   ORDERED that

   1. Plaintiff's motion to permanently enjoin the Arbitration is DENIED.

IT IS SO ORDERED.

*David N. Hurd*
U.S. District Judge

Dated: June 2, 2022
       Utica, New York.